1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                    FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8

9  JASON SAUNDERS,

10            Plaintiff,              CV F 97 5612 OWW WMW PC

11    vs.

12                                    ORDER DISMISSING SECOND
                                      AMENDED COMPLAINT
13                                    WITH LEAVE TO AMEND

14

15  LOWRIMORE, et al.,               _____

16            Defendants.

17

18        Plaintiff is a state prisoner proceeding pro se in a civil rights action pursuant to 42 U.S.C.

19  § 1983.  Pending before the court is plaintiff's second amended complaint.  Defendant names the

20  following individual defendants: Cal Terhune, Director of the then California Department of

21  Corrections; Wasco State Prison Warden Mike Carrillo; Chief Deputy Warden A.K. Fillon;

22  Lieutenant G. Dobbs; Lieutenant S. Cheney; Lieutenant Chrones; Correctional Officer (C/O)

23  Joan Lowrimore; C/O Keith Reynolds; C/O Steve Manion; Nurse Julie Santos; Nurse Drag.

24                          <u>PROCEDURAL HISTORY</u>

25        This action was dismissed on April 20, 2004, on the ground that Plaintiff failed to pay the

26

filing fee.  Plaintiff was denied leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(g).   Plaintiff filed a motion for reconsideration of the order dismissing this action.  On July 5, 2006, Plaintiff sent to the court a letter, indicating that the filing fee had been paid.  Though the docket failed to reflect receipt of the filing fee, Plaintiff provided documentation that the fee had indeed been paid.  On July 6, 2006, an order was entered, granting the motion for reconsideration and remanding the matter to the Magistrate Judge to screen the operative pleading, the second amended complaint.[1]

## ALLEGATIONS

The actions that give rise to this complaint occurred while plaintiff was housed at Wasco State Prison.  Plaintiff names as defendants the following individuals: Cal Terhune, Director of the California Department of Corrections; Mike Carrillo, Warden at Wasco State Prison; Chief Deputy Warden A. K. Fillon; Lieutenant Dobbs; Lt. Cheney; Lt. Chrones; Correctional Officer Lowrimore; C/O Manion; C/O Reynolds; Nurses Santos and Drag.  The allegations in the complaint stem from actions of defendants while plaintiff has housed in the prison infirmary.

On May 8, 1997, plaintiff was admitted to the infirmary following a letter that he had written to an Associate Warden.  In that letter, plaintiff indicated an intention to harm himself. Plaintiff was allegedly placed on psychiatric medication.  Plaintiff specifically alleges that "upon plaintiff's infirmary admission, these defendants [Lowrimore, Santos, Drag and Does 1 and 2] had either direct or constructively knowledge of plaintiff's suicidal ideations and his potential for inflicting self injury."  (Am. Compl.; 8:15-57).  Plaintiff alleges that C/O Lowrimore and Nurse Drag, assigned to the unit, "had either direct or constructive knowledge of plaintiff's suicidal ideations and his potential for inflicting self-injury."  Plaintiff was prescribed "extensive amounts" of psychiatric medication."

---

[1] Plaintiff has filed over 30 separate lawsuits in this district.  Of the 20 cases that have been closed, one was settled, one was resolved in defendants' favor on summary judgment, and the balance were either dismissed without prejudice or for failure to state a claim.

1    From May 8 to May 16, Plaintiff was housed in a cell in the infirmary and was prescribed
2    "extensive amounts" of psychiatric medication for "documented fears and abnormal reactions of
3    plaintiff." During plaintiff's time in the infirmary, he was prescribed seven medications.
4    On May 12, 1997, plaintiff requested a copy of the infirmary regulations and patient
5    rights. Lowrimore refused plaintiff's request. Lowrimore also refused Plaintiff's request for an
6    inmate grievance form, CDC Form 602. Plaintiff became agitated, pacing back and forth in his
7    cell and talking to himself in order to "cool off." Plaintiff alleges that, at times, defendant Drag
8    fabricates stories regarding plaintiff's suicidal tendencies in order to manipulate plaintiff's
9    medication or order restraints. Plaintiff alleges that based upon the false reports by Defendant
10   Drag, the treating physician directed that Plaintiff be forcefully medicated and restrained.
11   Plaintiff alleges that "defendant Lowrimore was observed extensively confronting defendant
12   Drag in relation to making such false accounts in which to penalize plaintiff." Id.; 10:12.
13   On May 16, 1997, between 10:00 p.m. and midnight, plaintiff submitted 5 items of legal
14   correspondence to defendant Lowrimore for mailing. Plaintiff informed Lowrimore that the
15   correspondence was confidential. Lowrimore refused to process them for mailing. Plaintiff
16   questioned Lowrimore, stating "so you're refusing to give me my legal mail back?" Lowrimore
17   responded by turning off the water to plaintiff's cell "out of her suspicion that plaintiff  would
18   most likely flood the tier despite the absence of any expressed threat of plaintiff to do so."
19   Lowrimore then placed plaintiff's legal mail on her desk, informing plaintiff that the mail would
20   be forwarded to the Investigative Services Unit (ISU).
21   Lowrimore than contacted C/O Manion. Manion responded, and plaintiff observed
22   Lowrimore handing plaintiff's mail to Manion, who opened the mail and read the contents.
23   Plaintiff alleges that the contents were amendments to a request for a protective order filed by
24   plaintiff against officials at Wasco. Subsequently, "plaintiff began agitated and began pacing his
25   cell prior to punching his cell door middle window pane cracking the glass in his window."
26

3

1   Administrative staff responded and Plaintiff's treating physician was contacted. The

2   physician directed that Plaintiff be forcefully medicated and placed into restraints.

3   Administrative staff spoke with Plaintiff. Plaintiff agreed to not cause any further disturbance so

4   long as Defendants Lowrimore and Manion "refrained from their deliberate doings which was

5   the cause of plaintiff being incited into acting up." Id.; 12:8-9.  Plaintiff alleges that

6   administrative staff reprimanded Manion and Lowrimore. Plaintiff alleges that Manion and

7   Lowrimore refused to follow the doctor's order to forcefully medicate and restrain Plaintiff.

8   Once administrative staff departed, Defendants Santos and Lowrimore began to incite and

9   provoke Plaintiff further. In response, Plaintiff began yelling in order to "smother" the

10  statements made by Lowrimore and Santos.   Plaintiff alleges that despite the absence of any

11  threat to flood the tier and "abuse his access to free running water." Lowrimore shut off the water

12  to Plaintiff's cell. Lowrimore and Santos "taunted and teased plaintiff upon which they both

13  expressed their knowledge of plaintiff's desire for  water being linked to the nature of

14  psychotropic medicines plaintiff was prescribed and had taken up to such point in time." Id.

15  12:26-13:1

16  Plaintiff continued to "plead" with Lowrimore and Santos to give him a glass of water.

17  Defendants refused to turn Plaintiff's water on or give him a glass of water, and continued to

18  taunt him. They told Plaintiff "you don't have shit coming."  In response, Plaintiff stated "that's

19  exactly what's coming then, shit."

20  Plaintiff defecated into a cup, mixed it with water from his toilet, and poured it outside of

21  his cell door. Santos swept it back into his cell with a broom, telling Plaintiff to "keep his

22  'negro' shit in there." Plaintiff continued to scoop water from his toilet in order to flush the

23  material outside his cell, and Santos continued to push it back in. Santos placed a piece of linen

24  in front of Plaintiff's cell door in order to keep the material in the cell.

25  Later in the evening, Defendants Reynolds and Manion arrived. Lowrimore, Reynolds

26

4

and Manion taped the edges of Plaintiff's cell door.  Once the door was sealed, Reynolds and Lowrimore intentionally turned up the cell heater in Plaintiff's cell.   In response, Plaintiff began to bang and kick his cell door.  Plaintiff alleges that Defendants knew of the danger caused by extreme heat to those taking pyschotropic medications.   Plaintiff requested, and was again denied, drinking water.

"After some time," Plaintiff made a pile of linen and paper by the cell door.  Plaintiff informed Lowrimore that he would burn his cell if he did not get water.  Plaintiff "further advised defendant Lowrimore of his intentions of injuring himself by fire and toxic smoke of she refused to provide plaintiff water as entitled plaintiff." Id. 16:11-12.  Lowrimore "continued to provoke plaintiff into further disturbance" by telling him "do what you have to do!"  Plaintiff alleges that

> Plaintiff created a fire in his assigned cell location.  Within minutes, plaintiff's entire cell location was engulfed in thick black smoke.  The sole verbalization plaintiff recalls prior to losing consciousness was defendant Lowrimore advising another to 'hurry up and remove the tape, quick before they get here."  Subconsciously, plaintiff recalls hearing at least one request to exit his cell prior to losing total consciousness.

> According to the defendants' accounts of transactions following plaintiff's alleged refusal to exit his cell, Plaintiff was removed from the cell by Defendant Reynolds and Officer T. Sharpe.  Following Plaintiff's removal from the burning cell mechanical restraints were applied to both plaintiff's wrists and ankles by defendant Manion which were later discovered by plaintiff to be extremely tight cutting plaintiff's circulation, cutting plaintiff and causing swelling and pain to both of plaintiff's hands.  Immediately following the securing of Plaintiff's unconscious body in mechanical restraints, plaintiff was then placed on a gurney and strapped down in five point restraints whereupon oxygen was applied to plaintiff outside of the infirmary housing area by defendant Santos.  Thereafter, plaintiff was urgently transported to the nearest community medical facility via code II ambulance upon where plaintiff became conscious and was treated.

Id; 16:19-17:13.

 When Plaintiff was returned from the hospital, he was subjected to two disciplinary

reports.  Plaintiff alleges that Defendants Reynolds and Manion "further authored known to be false and misleading reports with respect to the May 16, 1997, incidents and in which to conceal the culpability of the Defendants herein.   On July 4, 1997, Plaintiff appeared before Defendants G. Dobbs and S. Cheney for adjudication of his disciplinary allegations.  Plaintiff alleges that they "continued the conspiracy" by finding him guilty.   Specifically, Plaintiff alleges that Dobbs and Cheney "doctored the actual occurrence" at the hearing.

On July 23, 1997, Plaintiff received the final disposition of the disciplinary hearings. Plaintiff filed an appeal of those dispositions.   On July 31, 1997, Plaintiff appeared before Defendant Chrones for the adjudication of the destruction of property case regarding the damaged mattress.  Plaintiff alleges that Chrones "further conspired to falsely convict plaintiff without regard to plaintiff's exonerating evidence presented by plaintiff."  Id.; 20:6.

On review of the appeals, Defendant Fillon "condoned the obvious conspiracy" by refusing to address "the obvious fabrications."

Plaintiff also sets forth generalized allegations of inhuman living conditions, and claims that his medical and psychiatric treatment are related to "policies, practices, pervasive practices, customs, procedures, ordinances and regulations of the supervisorial defendants herein.   Plaintiff alleges that the supervisory defendants routinely disregard foreseeable risks of danger to Plaintiff and other psychiatric patients.   Plaintiff also levels allegations of "anti- African American hatred and disregard for the health of inmates participating in confrontational encounters with the correctional defendants, which has been fostered and tolerated at the WSPRC in particular. . ." Id.; 22:4-5.

In paragraph 45 of the second amended complaint, Plaintiff specifically alleges that contemporaneous with and subsequent to the events at issue in the May 16, 1997, cell removal, Defendants Terhune, Carillo, Fillon, Dobbs, Cheney, Chrones and Does 1 and 2, "implemented, maintained, tolerated and/or enforced the following deficient policies, practices, and customs."

1   The balance of the complaint includes  allegations of failure to properly hire and train

2   correctional staff, as well as allegations of "fostering a code of silence."

3                              EIGHTH AMENDMENT

4          To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison

5   conditions must involve "the wanton and unnecessary infliction of pain . . . ."  Rhodes v.

6   Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh,

7   prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and

8   personal safety.  Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v.

9   Ray, 682 F.2d 1237, 1246 (9th Cir. 1982).  Where a prisoner alleges injuries stemming from

10  unsafe conditions of confinement, prison officials may be held liable only if they acted with

11  "deliberate indifference to a substantial risk of serious harm."  Frost v. Agnos, 152 F.3d 1124,

12  1128 (9th Cir. 1998).

13         The deliberate indifference standard involves an objective and a subjective prong.  First,

14  the alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Farmer v.

15  Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second,

16  the prison official must "know] of and disregard an excessive risk to inmate health or safety . . .

17  ."  Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth

18  Amendment for denying humane conditions of confinement only if he knows that inmates face a

19  substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.

20  Id. at 837-45.  Prison officials may avoid liability by presenting evidence that they lacked

21  knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to

22  the risk.  Id. at 844-45.  Mere negligence on the part of the prison official is not sufficient to

23  establish liability, but rather, the official's conduct must have been wanton.  Id. at 835; Frost, 152

24  F.3d at 1128.

25         "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

26

1    Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8

2    (1992). "The objective component of an Eighth Amendment claim is . . . contextual and

3    responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted).

4    "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-

5    confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause

6    routine discomfort is part of the penalty that criminal offenders pay for their offenses against

7    society, only those deprivations denying the minimal civilized measure of life's necessities are

8    sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and

9    citations omitted).

10        Plaintiff's allegations indicate that though he did suffer injury, his injury was not caused

11   by any conduct of the named Defendants. Plaintiff's allegations reveal that Defendants, at most,

12   subjected Plaintiff to teasing, taunting, and verbal harassment. Mere verbal harassment or abuse,

13   including the use of racial epithets, does not violate the Constitution and, thus, does not give rise

14   to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th

15   Cir. 1987). Accepting as true, Plaintiff's allegations and treating Defendants' taunts and

16   allegations as a threat, such conduct, while inappropriate, does not rise to the level of a

17   constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

18        As to Plaintiff's allegation that the heat in his cell was turned up, knowing that it would

19   cause Plaintiff discomfort, the Supreme Court noted in Hudson that "[E]xtreme deprivations are

20   required to make out a conditions-of-confinement claim." Hudson, 503 U.S. at 9.

21        The crux of Plaintiff's allegations are his belief that Defendants' conduct caused him to

22   light his cell on fire. The facts of the second amended complaint provide a reasonable basis for

23   Defendants to have engaged in the conduct at issue. Plaintiff contends that the water to his cell

24   was shut off on false premises. Plaintiff alleges that there was no threat of flooding the tier. In

25   essence, Plaintiff is challenging the justification for shutting off the water. As noted above, in

26

order to state a claim, Plaintiff must allege facts indicating that Defendants' conduct was motivated by deliberate indifference.  Plaintiff's subjective impression of Defendants' intent does not govern - Plaintiff must come forward with facts indicating that Defendants acted with deliberate indifference to a serious risk of injury to Plaintiff.  The fact that Plaintiff conditioned his conduct on having his water turned back on or getting a glass of water does not mean that defendants were deliberately indifferent.  Given Plaintiff's behavior as alleged in the second amended complaint, a liberal construction of the complaint does not indicate deliberate indifference on Defendants' part for refusal to provide Plaintiff with a glass of water or to turn on the water in his cell.  Indeed, once Plaintiff started the fire, his own facts allege that Defendants pulled him out of the cell, provided him with oxygen at the scene, and transported him immediately for medical care.

As to the allegations that Defendants taped up his cell and turned up the heat, the facts, as alleged, do not indicate an extreme deprivation.  Though Defendants were aware that high heat could cause discomfort, there are no specific allegations that Plaintiff suffered injury beyond discomfort.   Simply put, on the facts alleged, Plaintiff believes he was provoked and; voluntarily chose to start a fire in his cell.  Though Defendants' alleged conduct was inappropriate, even abusive, it does not rise to the level of an Eight Amendment violation.

Because Plaintiff has failed to allege facts sufficient to state a claim for relief, the complaint should be dismissed. Though Plaintiff's original complaint and first amended complaint were dismissed with leave to amend, neither of those orders addressed the facts alleged in the second amended complaint.  The order dismissing the original complaint was grounded on Plaintiff's failure to articulate facts that charged the named defendants with specific conduct.  The order dismissing the first amended complaint addressed the exhaustion issue noted below.

The Court will grant Plaintiff an opportunity to file a third amended complaint.  Plaintiff

1  is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended

2  complaint complete.  Local Rule 15-220 requires that an amended complaint be complete in

3  itself without reference to any prior pleading.  This is because, as a  general rule, an amended

4  complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

5  Once plaintiff files an amended complaint, the original pleading no longer serves any function in

6  the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the

7  involvement of each defendant must be sufficiently alleged.

8                                                    EXHAUSTION

9         The Civil Rights Act under which this action was filed provides:

10               Every person who, under color of [state law]  . . . subjects, or
                 causes to be subjected, any citizen of the United States. . . to the
11               deprivation of any rights, privileges, or immunities secured by the
                 Constitution. . . shall be liable to the party injured in an action at
12               law, suit in equity, or other proper proceeding for redress.

13  42 U.S.C. § 1983.

14        Section 7 of The Prison Litigation Reform Act was amended to read as follows:

15               (a) APPLICABILITY OF ADMINISTRATIVE REMEDIES.  No action shall be
16               brought with respect to prison conditions under section 1979 of the Revised
                 Statutes of the United States (42 U.S.C. 1983) or any other Federal law, by a
17               prisoner confined in any jail, prison, or other correctional facility until such
                 administrative remedies as are available are exhausted.

18
19               42 U.S.C. § 1997e(a).  In Booth v. Churner,532 U.S. 731 (2001).  The Supreme

20  Court, in addressing the question of whether a prisoner need exhaust available remedies when

21  monetary damages are unavailable, held that "Congress has mandated exhaustion clearly enough,

22  regardless of the relief offered through administrative procedures."  Id. at 1821.  In order to bring

23  his claim in federal court, plaintiff must completely exhaust his available administrative

24  remedies.

25        In California, there are four levels of review - informal level, first formal level, second

26  formal level, and third formal level.  The third formal level constitutes the Director's decision on

appeal.  Cal. Code Regs. Tit. 15, § 3084.5(e)(2).   The following time limits apply.

> Appeal Time Limits.(a) Commencement. Time limits for submitting or reviewing appeals shall commence upon the date of receipt of the appeal document by the appeals coordinator or the appellant.(b) Departmental response. Appeals shall be responded to and returned to the appellant by staff within the following time limits:(1) Informal level responses shall be completed within ten working days. 2) First level responses shall be completed within 30 working days.(3) Second level responses shall be completed within 20 working days, or 30 working days if first level is waived pursuant to section 3084.5 (a)(3).(4) Third level responses shall be completed within 60 working days.

Cal. Code Rets. Tit. 15, § 3084.6.

A prisoner's concession to nonexhaustion is a valid ground for dismissal of an action.

Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir.2003); McKinney v. Carey, 311 F.3d 1198, 1200-01 (9th Cir.2002) (per curiam). Because plaintiff's complaint contains a concession to nonexhaustion of available administrative remedies and plaintiff's ground for nonexhaustion is futility, this action should be dismissed without prejudice to the filing of a new civil rights action after plaintiff has exhausted available administrative remedies.   Exhaustion is an affirmative defense, and "inmate are not required to specifically plead or demonstrate exhaustion in their complaints." Jones v. Bock, 127 S.Ct. 910, 921 (2007).   Here, however, Plaintiff has pled exhaustion.  Plaintiff specifically pleads in the second amended complaint that "to the extent that administrative remedies were available, Plaintiff has exhausted all such processes consistent with Booth.

The events that give rise to this lawsuit occurred on May 16, 1997.  This action was filed 27 days later, on June 13, 1997.  As to the claims regarding the disciplinary process, those events occurred after the filing of this action.  Even had Plaintiff exhausted his claims regarding the disciplinary process, the Court of Appeals has held that District Courts are required under Prison Litigation Reform Act (PLRA) to dismiss actions without prejudice where prisoner failed to exhaust administrative remedies prior to filing suit but was in process of doing so when motion to dismiss was filed.  McKinney v.  Carey, 311 F.3d 1198 (9th Cir. 2002).   In order for Plaintiff

to have properly exhausted his grievance prior to filing suit, he would have had to avail himself of the informal, first formal, second formal, and third (Director's) level of review prior to filing suit.  Though not required to plead exhaustion, Plaintiff did so, but does not specify what grievance he filed, when he filed it, and what response he received.   Assuming Plaintiff filed grievances and received no responses within the required time frame, it would have taken him 90-140 days to appeal each level.

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's second amended complaint is dismissed; and

1.  Plaintiff is granted thirty days from the date of service of this order to file a third amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "Third Amended Complaint."  Failure to file an amended complaint in accordance with this order will result in dismissal of this action.

IT IS SO ORDERED.

**Dated:      February 15, 2008**                        _____/s/ Oliver W. Wanger_____
                                                          UNITED STATES DISTRICT JUDGE

12